Bernard S. Meyer, J.
In this action, tried without a jury, plaintiff bank seeks in its first cause of action to require defendant Eurez Construction Corporation to indorse a promissory note of J. J. White Ready Mix Concrete Corp. payable to Eurez and negotiated to the bank by an officer of Eurez; in the second cause of action seeks to recover from Eurez the $20,000 which it received from the bank as a result of such negotiation; in the third cause of action seeks to recover from Eurez, J. J. White Ready Mix Concrete Corp. and John J. White, as indorser, on the note, it having been dishonored when due; and in the fourth cause of action seeks to recover from defendants Rezendi, Euzebio and Salonia, as guarantors of the obligations of Eurez Construction Corp.
Though defendants Rezendi and Euzebio denied execution of guarantees, they failed to appear and testify and the authenticity of their signatures was established by the signature cards filed with the bank for the Eurez account and for a savings *501 account of defendant Euzebio. Each guarantee includes a waiver of “ protest, presentment, demand for payment, notice of default or nonpayment, and notice of dishonor,” and provides that it is “an absolute and unconditional guarantee of payment, without regard to the validity, regularity, or enforceability of any obligation or purported obligation”. The note in suit was delivered to the bank on May 13, 1968 by defendant Salonia, an officer of Eurez, and though it was not indorsed on behalf of Eurez, the proceeds of the note were credited to the Eurez account on that day and thereafter were drawn against by that corporation. The fact that the bank had no corporate resolution authorizing Salonia to deal with the bank does not, under those circumstances, avail either Eurez or the individual guarantors (Bank of North Amer. v. Shapiro, 31 A D 2d 465, 466). Plaintiff is, therefore, entitled to judgment as demanded in the complaint on the second and fourth causes of action.
The transfer of the note for value to plaintiff gives it £ £ the specifically enforceable right to have the unqualified indorsement of the transferor” (Uniform Commercial Code, § 3-201, subd. [3]). Thus, plaintiff is also entitled to judgment on the first cause of action. Its right to recover against defendants J. J. "White Beady Mix Concrete Corp. and John J. White on the third cause of action is less clear, however. Subdivision (3) of section 3-201 provides that “Negotiation takes effect only when the indorsement is made ”. As to any defense of which the transferee of an instrument payable to order has notice prior to the time £ £ indorsement is made”, the transferee is not a holder in due course (Uniform Commercial Code, § 1-201, subd. [20]; §. 3-202, subd. [1]; § 3-302, subd. [1], par. [c]). Defendants J. J. White Ready Mix Concrete Corp. and John J. White urge as a complete defense to the third cause of action that the note was made by the corporate defendant and indorsed by the individual defendant as an accommodation to Eurez and without consideration. They urge that under subdivision (c) of section 3-306 and section 3-408 of the Uniform Commercial Code, want of consideration is a defense against one who is not a holder in due course. Plaintiff, relying on subdivisions (1) and (2) of section 3-415 of the Uniform Commercial Code, argues that absence of consideration is not available as a .defense to an accommodation maker or indorser when the instrument is taken for value before it is due. Though the court finds that defendant J. J. White Beady Mix Concrete Corp. made, and defendant John J. White indorsed, the note in suit as an accommodation to defendant Eurez and without consideration, it holds plaintiff’s interpretation of the Uniform *502 Commercial Code to be correct and, therefore, awards plaintiff judgment against them as well as defendant Eurez on the third cause of action.
As Professor Peters states “ While Section 3-415(2) seems to opt for liability in this situation, the outcome is by no means clear ” (Peters, Suretyship Under Article 3 of the Uniform Commercial Code, 77 Yale L. J. 833, 848). The problem arises because section 3-408 of the Uniform Commercial Code states that “ Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (Section 3-305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind ’ ’, but fails to except cases in which an accommodation party signs without consideration. Under well-known rules of construction that omission would lead to the conclusion that want of consideration to the accommodation maker and indorser is a defense available to them, were it not for the provisions of subdivisions (1) and (2) of section 3-415.
Subdivision (1) of section 3-415 provides that “ An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it” and subdivision (2) states that “ When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.” Nothing in subdivision (1) suggests that consideration running to an accommodation maker is a sine qua non of his liability; indeed Official Comment 2 to section 3-415 of the Uniform Commercial Code makes clear that its definition includes both gratuitous and paid sureties. Furthermore, nothing in subdivision (2) requires that the accommodation party have received value. Ostensibly its purpose is to protect the. taker when the instrument has been taken for value and before maturity. In light of the phrase “ before it is due ’ ’ it seems unreasonable to construe the code to require that value have been given at the time of issuance in order to hold an accommodation maker (but, see, Peters, op. cit. supra 77 Yale L. J., p. 845). Nor can the concluding clause (6$ even though the taker knows of the accommodation”) be seized upon as limiting the effect of the subdivision to the negation of knowledge of accommodation status as a defense, for that construction would either make paragraph (c) of subdivision (4) of section 3-304 superfluous or in view of the provisions of that section and section 3-302 would make meaningless the reference in subdivision (2) of section 3-415 to taking for value *503 and before maturity. If subdivision (2) of section 3-415 was not intended to give status to a taker for value before maturity different from the status he would have as a holder in due course, the section should have referred not to a “ taker ’ ’ but to a “ holder who when he takes ” (cf. § 3-302, subd. [1] which uses the phrase “holder who takes”), especially since “holder” is expressly defined in subdivision (20) of section 1-201 whereas the code nowhere defines “taker”, and since the predecessor to subdivision (2) of section 3411.5, section 55 of the Negotiable Instruments Law (Uniform Negotiable Instruments Law, § 29), used the phrase “ holder for value ”. Some significance must also be accorded the fact that though Professor Brannan pressed for amendment of the Negotiable Instruments Law provisions to substitute in place of 1 ‘ holder for value ” the words “ one who is in other respects a holder in due course,” (Brannan, Some Necessary Amendments of the Negotiable Instruments Law, 26 Harv. L. Rev. 493), the draftsmen of the Uniform Commercial Code (who, it may be presumed, were aware of the Brannan article), while modifying the Negotiable Instruments Law concept to include not only taking “for value” (which was the sole Negotiable Instrument Law criterion) but also taking “before it [the instrument] is due,” and to drop the former § 52 (Uniform Negotiable Instruments Law, § 26) definition of “ holder for value ” as “ erroneous and misleading, since a holder who does not himself give value cannot qualify as a holder in due course in Ms own right merely because value has previously been given for the instrument,” Official Comment 1 to section 3-303 of the Uniform Commercial Code, nevertheless did not incorporate in section 3-415 all of the holder in due course criteria and substituted for the word “holder ” previously used the word “taker”. It seems fair to argue from this that the draftsmen did not intend to require that a taker for value before maturity have holder in due course status in order to hold an accommodation party liable. The difficulty with the argument is that it proves too much, for to paraphrase Professor Brannan (op. cit., supra, p. 498) if the argument is sound, a taker of accommodation paper occupies a position superior to that of any, other purchaser of negotiable paper, since there are no other requirements for his recovery except that he be a taker for value and before maturity (see, also, 1955 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1955, No. 65], vol. 2, pp. 918-919). It is not now necessary to determine to what extent defenses other than want of consideration are available against a taker for value before maturity who is not a holder *504 in due course (cf. Uniform Commercial Code, § 3-306, subd. [c] and § 3-408). It is sufficient to note that Official Comment 3 to section 3-415 states that: ‘ ‘ The obligation of the accommodation party is supported by any consideration for which the instrument is taken before it is due ” and to hold on the basis of that Comment and the history and wording of the section, that there is no want of consideration within the meaning of section 3-408 when consideration moves before maturity to the party accommodated, even though the accommodation maker receives no consideration for executing the instrument.
The conclusion thus reached, while it reads into section 3-408 an exception which the draftsmen of the code have not articulated, can be supported by a number of additional arguments. “Consideration” is distinguished from “value” throughout article 3 of the code, Official Comment 1 to section 3-408; Official Comment 2 to section 3-303. “ Consideration ” refers to what the obligor has received for his obligation and is important only on the question whether the obligation can be enforced against him, ibid. “ Value ” on the other hand refers to what the holder or taker has given up and is important only on the question whether the holder ‘ ‘ qualifies as a particular kind of holder ”, Official Comment 2 to section 3-303. The fact that in section 3-424 of the May 1949 Draft of the Uniform Commercial Code, the sentence which became subdivision (2) of section 3-415 of the code in its final form began ‘ ‘ When the instrument has been taken for consideration before it is due ” (emphasis supplied) and that the word “ consideration ” was changed to “value” in the spring 1950 draft, when read together with Official Comment 3 to section 3-415 (“ The obligation of the accommodation party is supported by any consideration [sic] for which the instrument is taken before it is due ”, [emphasis supplied]), suggests that the draftsmen intended the taker’s right to enforce an instrument against an accommodation party to turn on whether the taker had given value, rather than whether the accommodation party had. received consideration.
Secondly, section 1-103 of the Uniform Commercial Code provides that: ‘ ‘ Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant * * ® shall supplement its provisions.” The rule of law prior to the code was that one who receives before maturity a note signed by the maker for the accommodation of another is not affected by the mere fact that it was made without consideration (Chester v. Dorr, 41 N. Y. 279, 284; Grocers’ Bank v. Penfield, 69 N. Y. 502; see McGoldrick v. Family Finance Corp., 287 N. Y. 535, 538; Packard v. Windholz, *505 88 App. Div. 365, affd. 180 N. Y. 549; Welbilt Concrete Constr. Corp. v. Kornicki, 26 A D 2d 661). The omission from section 3-408 of the Uniform Commercial Code of any exception covering the situation suggests an intention on the part of the draftsmen to change the rule; the fact that gratuitous accommodation is covered by section 3-415 of the Uniform Commercial Code, the specific language of subdivision (2) of section 3^415 and the absence of any logical basis for change suggest an intention to preserve the prior rule. If the latter reasons be an insufficient basis for concluding that the prior rule continues, it is likewise impossible to view the omission from section 3-408 as a displacement ‘ ‘ by the particular provisions of this Act ’ ’ of the prior rule. Absent such displacement, the prior rule continues.
Thirdly, paragraph (c) of subdivision (2) of section 1-102 of the code directs that it be liberally construed to promote its purposes and policies, one of which is “to make uniform the law among the various jurisdictions ’ ’. Though based on somewhat different reasoning, there are cases in other jurisdictions holding that one who is not a holder in due course but who takes accommodation paper for value before it is due may, under subdivision (2) of section 3-415, enforce it against the accommodation maker (James Talcott, Inc. v. Ratowsky Assoc., 38 Pa. D. & C. 2d 624; see Armstrong Co. v. Janburt Embroidery Corp., 97 N. J. Super. 246; and that want of consideration is no defense to an accommodation maker, Seaboard Finance Co. of Conn. v. Dorman, 4 Conn. Cir. 154).
Brief mention must also be made of a few additional points. While defendants J. J. Wliite Ready Mix Concrete Corp. and John J. White were accommodation parties, plaintiff bank did not know that fact when it took the note. That it did not does not, however, change the result in light of the wording of subdivision (2) of section 3-415. Defendant White’s testimony was that when he gave the note to Alfredo Rezendi he told him it was not to be used unless Eurez needed it to make its payroll. Defendants presented no proof that when the note was discounted by Eurez no part of its proceeds was required by Eurez to make its payroll, but in any event, the court finds that plaintiff took the note without notice of that restriction and may, therefore, enforce it even if the note was in fact used in violation of the restriction (Davis v. Sisti, 3 Misc 2d 132; see Rheinstein v. Case, 23 Misc 2d 41). Finally, the court finds that defendant White directed his bank not to honor the note and, therefore, that neither he nor his corporation was entitled to notice of protest (Uniform Commercial Code, § 3-511, subd. [2], par. [b]).
*506 The foregoing constitutes the decision of the court pursuant to CPLR 4213 (subd. [b]) and all motions on which decision was reserved are decided accordingly. While plaintiff is entitled to judgment against defendant Eurez on the theory of either the second or the third cause of action, the same moneys are involved in both, and plaintiff is, therefore, entitled to but one judgment on both causes of action against defendant Eurez.